UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


ROBIN LEAL,

       Petitioner,

v.                              Case No. 8:03-CR-427-T-24MAP
                                           8:06-CV-1602-T-24MAP

UNITED STATES OF AMERICA,

       Respondent.

_____/

## ORDER

This cause comes before the Court upon Petitioner Robin Leal's ("Leal") Amended Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. CV-5.[1] The United States filed a response in opposition. CV-7.  Leal filed a rebuttal to the United States' response. CV-8.

A review of the record demonstrates that, for the following reasons, Leal's 28 U.S.C. § 2255 motion to vacate must be **DENIED.**

## I.   Procedural History

Leal was charged by a grand jury in the Middle District of Florida on October 16, 2003, with possession with intent to distribute five hundred (500) grams or more of a

---

[1]For purposes of this Order, references to the docket in the underlying criminal case, 8:03-CR-0427-24MAP, are designated as "CR-__."  References to the docket in the instant civil case are designated as "CV-__."

mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii) and 18 U.S.C. § 2 (Count One), and with being a convicted felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count Two). CR-1.1.

Leal pled guilty to Possession With Intent To Distribute 500 Grams or more of Methamphetamine on April 2, 2004. CR-16.  On July 20, 2004, this Court sentenced Leal to a term of 292 months imprisonment.  CR-25. Leal pursued a direct appeal, CR-30, which was dismissed by the Eleventh Circuit on September 5, 2005, due to the appeal waiver provision in his written plea agreement. CR-44. Leal's original section 2255 motion was filed on August 30, 2006. CV-1.  Pursuant to the Court's order, he filed an amended motion to vacate on October 30, 2006. CV-5.  The motion is timely.

## II. Background Facts

In the factual basis of his plea agreement, Leal stipulated to the following facts: On or about September 16, 2003, law enforcement officers arrested Leal in front of his residence in Lakeland, Florida based on an unrelated outstanding warrant.  During a search of Leal's truck, officers found approximately 1140.9 grams of methamphetamine, $70,116 in cash, and a handgun, all of which belonged to Leal.  A subsequent search of Leal's residence revealed three additional guns.

Leal pled guilty and admitted he possessed with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine punishable by a maximum penalty of life imprisonment.  In the plea agreement, Leal expressly waived the right to appeal his sentence "directly or collaterally, on any ground . . . except for an upward departure by the sentencing judge, a sentence above the statutory

2

maximum, or a sentence in violation of the law apart from the sentencing guidelines . . . ."

At the petitioner's rearraignment, the United States Magistrate Judge reviewed the plea agreement, including the waiver of appeal contained therein, with Leal, confirming that Leal understood the consequences of his plea. CR-40 at 11-12. The Magistrate Judge also confirmed that Leal understood that his sentence would be determined according to the sentencing guidelines. *Id.* at 9-10.  The Magistrate Judge specifically advised Leal that he faced a minimum sentence of ten years imprisonment and a maximum sentence of life imprisonment. *Id.* at 8, 11-12.

At sentencing, Leal objected, pursuant to *Blakely v. Washington*, 542 U.S. 296 (2004), to the guideline calculation in the Presentence Report (PSI) holding him accountable for 9.07 kilograms (20 pounds) of methamphetamine because he had not pled to that amount in the plea agreement or at the rearraignment, nor was the drug quantity found beyond a reasonable doubt by a jury. CR-35 at 8-10, 18-20.  Leal argued he should be held accountable for only the 500 grams of methamphetamine charged in the indictment or, alternatively, only for the 1140.9 grams of methamphetamine to which he had stipulated in the factual basis of his plea agreement. *Id.* at 9.

The United  States argued that *Blakely* did not apply to the sentencing guidelines and that, if it did, the guidelines themselves would be unconstitutional and the Court would be permitted to impose sentence at any point within the statutory range. *Id.* at 11-12, 20-21. The United States then presented evidence to support the PSI's recommended drug quantity finding. *Id.* at 13-18.

At sentencing, this Court found by a preponderance of the evidence that Leal should

be held accountable for twenty pounds of methamphetamine as stated in the PSI. This Court, applying the guidelines, then sentenced Leal to 292 months imprisonment, the low end of the applicable guidelines sentencing range (292-365 months). *Id.* at 31. However, the Court stated that, even if the guidelines were unconstitutional, it considered Leal's sentence appropriate given his criminal record and the instant offense. *Id.* at 36.

Leal filed an appeal arguing that the district court imposed a sentence in violation of Leal's Fifth and Sixth Amendment rights by utilizing facts not pled in the indictment nor found beyond a reasonable doubt by a jury to increase his sentence. CV-7 Attachment A. The United States filed a motion to dismiss the appeal due to Leal's appeal waiver provision in his plea agreement. CV-7 Attachment B.  Leal filed a response to the United States' motion for dismissal.  CV-7 Attachment C.  In March 2005, the United States filed a brief arguing that Leal waived his argument on appeal that the district court erred in applying the sentencing guidelines and, even if he did not waive his argument, he was entitled to no relief because the error was harmless. CV-7 Attachment D.

Leal responded with a supplemental brief arguing (1) his sentence violated his constitutional rights pursuant to *United States v. Booker*, 543 U.S. 220 (2005) and (2) his guilty plea was not knowing and voluntary.[2] CV-7 Attachment E.  Regarding the first issue, Leal specifically argued that he did not waive his right to appeal *Booker* error because his sentence was above the "statutory maximum" as that term was understood by the parties and because his sentence was in violation of law apart from the sentencing guidelines.

---

[2]This brief was filed by Eric J. Eisnaugle, II, Esq. after he was appointed to replace Assistant Federal Public Defender Dionja L. Dyer following her motion to withdraw. Leal's prior appellate pleadings had been filed by Ms. Dyer.

Regarding the second issue, Leal claimed that he did not understand the consequences of his guilty plea at or before the rearraignment because Leal was not advised that he would be sentenced based on judicially found facts. The United States filed its supplemental reply brief arguing that Leal waived his right to appeal his sentence on the ground that the district court erred in applying the sentencing guidelines and that the district court did not plainly err in failing, sua sponte, to permit Leal to withdraw his guilty plea. CV-7 Attachment F.

In August 2005, Leal filed a response to the United States' motion to dismiss the appeal claiming that (1) his sentence was above the statutory maximum; (2) his sentence violated the law apart from the sentencing guidelines; and (3) his plea was not knowing, voluntary and intelligent. CV-7 Attachment G. Leal also filed a reply brief in August 2005 arguing that he did not waive his right to appeal *Booker* error; the *Booker* error was not harmless beyond a reasonable doubt; and his guilty plea was not knowing, voluntary and intelligent. CV-7 Attachment H. On September 9, 2005, the United States Court of Appeals for the Eleventh Circuit granted the United States' motion to dismiss Leal's appeal based on the appeal waiver provision in his plea agreement. CR-44.  Leal filed this section 2255 motion alleging three grounds for relief:

1) That Leal's counsel was ineffective in violation of his Sixth Amendment right because (a) his counsel failed to object to the constitutionality of his sentence where it was "beyond the prescribed penalty [for] the amount of controlled substance" Leal admitted to possessing in the factual basis of his plea agreement and (b) his counsel failed to negotiate a "knowing and intelligent" plea and communicate its consequences to Leal. (CV-5);

2) That Leal's sentence was unconstitutional because the District Court determined

his offense level under the Federal Sentencing Guidelines using a drug quantity not admitted by Leal nor found beyond a reasonable doubt by a jury;

3) That Leal was incorrectly sentenced under a Schedule II substance schedule under the Federal Sentencing Guidelines because he only admitted possessing methamphetamine in the "rock" form, which should be categorized as a Schedule III substance.

### Standard of Review for Ineffective Assistance of Counsel

To prevail on a claim of ineffective assistance of counsel, the petitioner must establish deficient performance and resulting prejudice.  The Sixth Amendment right to counsel is the right to effective assistance of counsel.  *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The benchmark for judging any claim of ineffective assistance of counsel, however, is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *see also Boykins v. Wainwright*, 737 F.2d 1539, 1542 (11th Cir. 1984). Because a lawyer is presumed to be competent to assist a Petitioner, the burden is on the accused to demonstrate the denial of the effective assistance of counsel. *United States v. Cronic*, 466 U.S. 648, 658 (1984). Ineffectiveness of counsel may be grounds for vacating conviction if (1) counsel's performance fell below an objective standard of reasonable professional assistance and (2) the Petitioner was prejudiced by the deficient performance. *Strickland*, 466 U.S. at 687, 694.

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Id.* at 58.  In order "to satisfy the 'prejudice' requirement, the

6

Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial." *Id.* at 58-59.

## III. Discussion

### Ground One

Leal alleges that his counsel was ineffective because (1) Leal's counsel failed to negotiate a plea in Leal's best interests and then failed to communicate the plea's consequences to Leal; and (2) Leal's counsel failed to object to the constitutionality of Leal's sentence at the sentencing hearing.  In Leal's memorandum of law in support of the §2255 motion and in his rebuttal to the United States' response, Leal discusses the law governing claims of ineffective assistance of counsel in §2255 proceedings without referring to any of the facts in the instant case. CV-2; CV-8.   The only thing that resembles a reference to facts in these supporting materials is a blanket statement that Leal was deprived of his constitutional right to direct review of his claims, on the merits. CV-2 at 4. Therefore, the Court has considered the facts alleged in the §2255 motion in conjunction with the law cited in the supporting memoranda.

The first aspect of Leal's ineffective assistance of counsel claim is negated by Leal's sworn testimony at his rearraignment. At Leal's rearraignment, the United States Magistrate Judge verified that Leal had reviewed and fully discussed his plea agreement with his attorney. CR-40 at 4. Leal confirmed that he agreed to plead guilty to Count One which charged him with possession with intent to distribute 500 grams or more of methamphetamine. *Id.* at  5. Leal acknowledged that he was not forced or threatened in any way to enter his guilty plea. *Id.* at 7. The Magistrate Judge then advised Leal that none

of the recommendations contained in the plea agreement were binding on the district court judge and that even if the district court judge rejected one or more of the recommendations, Leal could not withdraw his guilty plea. *Id.* Leal acknowledged that he understood. *Id.* Leal confirmed that he understood he faced a mandatory minimum sentence of ten years and a maximum sentence of life imprisonment. *Id.* at 8. Furthermore, Leal acknowledged that he had no questions about the possible penalties he faced. *Id.* at 8-9. After this inquiry, the Magistrate Judge advised Leal as follows:

> **THE COURT**:   I'm sure your lawyer has discussed this [potential penalties] with you. If your plea is accepted, there will be a presentence investigation and a report prepared by the Probation Officer that Judge Lazzara (sic) will use in sentencing you. A few weeks before the sentencing process – a few weeks before the sentencing hearing you will have an opportunity to review this report with your lawyer. If you and she have problems with the report, she can complain about it to the Probation Officer.
>
> This report will include information about your case, the facts of your case, how the guidelines are to be applied in your case and some history about you, whether you have a prior criminal record. Just as you have the right to complain about the report, so does the Government.
>
> At the sentencing hearing, you will be present. You will have an opportunity to be heard, to present such information and evidence as is relevant to the proceedings. If the Probation Office did not clear up any objections that your lawyer had, your lawyer can complain to the Judge about the report and the Judge will decide all objections at the time of sentencing, decide what guidelines apply to your case and what your guideline range is then the Judge will pass sentence accordingly. Do you understand this process as I have explained it to you?
>
> **PETITIONER LEAL**:  Yes, sir.

CR-40 at 9-10.

The Court continued, "Your lawyer may have given you some opinion about what she thinks the sentence will be. You may have some conclusion, come to some conclusion or expectation as to what the sentence will be. But if it is more severe than what you

expected, you will not be able to withdraw your plea." *Id.* at 10-11.  Leal advised the Magistrate Judge that he understood. *Id.* at 11. Later in the proceeding the Magistrate Judge again advised Leal:

> **THE COURT**:  And I want you to understand, Mr. Leal, that pleading guilty is a [sic] kind of like taking a step on a one-way road and that road points to sentencing. And once you get on that road, sometimes the traffic cop, namely the Judge, doesn't allow you to go back.
>
> There are certain rules about accepting pleas and there are rules, of course, about whether pleas can be withdrawn.  And before you say I want to plead guilty, I want to make sure that you are doing this with all due deliberation, that you have given it all of the necessary thought, that you are comfortable in the way that you are proceeding, because ultimately none of us in this room pay the price except you.

*Id.* at 15.

Leal confirmed that he wished to enter his guilty plea, *id.* at 18, he understood the charge alleged in Count One, *id.* at 19, and agreed to the facts contained in the plea agreement, *id.* at 20-21. The Magistrate Judge then found that Leal's guilty plea was informed, knowing and voluntary. *Id.* at 24.

At sentencing, the Court conducted an evidentiary hearing and found that Leal should be held accountable for 9,071 grams of methamphetamine, a drug quantity calculation beyond what was stated in the factual basis of the plea agreement.

Leal alleges that his counsel did not inform him that he could be held accountable for more than the 1,140.9 grams of methamphetamine he admitted to in the factual basis of the plea agreement.  Even if this claim was true, Leal is not entitled to relief because he cannot establish that he was prejudiced by counsel's alleged ineffective performance.  Leal acknowledged at his rearraignment that his guilty plea was voluntary, and that he understood that the offense of possession with the intent to distribute 500 grams or more

of methamphetamine carried a possible life sentence.  In addition, Leal told the Magistrate Judge that he understood that the district court judge would decide what guidelines would apply and determine the sentence, and that his lawyer could not promise him what the sentence would be.  Leal clearly declared that he understood the consequences of his plea, and that one consequence of that plea was a sentence to be determined by the Court based on the guidelines of up to  life imprisonment.  Thus, Leal cannot establish that he was prejudiced by counsel's alleged ineffective performance.

With respect to the second aspect of Leal's ineffective assistance of counsel claim, the transcript of the sentencing hearing rebuts Leal's contention that his attorney failed to object to the constitutionality of his sentence.

Before the sentencing hearing, counsel filed a request that the guidelines be constitutionally applied.  CR-22.  At sentencing, counsel objected to the sentence based on *Blakely v. Washington*, 542 U.S. 296 (2004)[3]  because the Court's determination of the drug amount was based on facts not pled in the indictment and not submitted to a jury. CR-24 at 7-9. She argued that *Blakely* applied to the sentencing and its application would place Leal at an offense level of 32.  *Id.*  The Court rejected this argument.  The fact that the Court did not accept counsel's argument does not establish that she was ineffective.   For performance to be ineffective, it must be established that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence.  *See Strickland*, 466 U.S. at 690. Leal's argument that his attorney was ineffective for failing to object to the constitutionality of the sentence is baseless because his attorney did object

---

[3] Leal's sentencing took place on July 20, 2004.  *Blakely* was decided on June 24, 2004.

10

to and argue the constitutionality of the sentence at sentencing.

Ground One does not warrant relief.

### Ground Two

Leal alleges that the District Court violated his Sixth Amendment right to trial by jury through the calculation of his sentence. CV-2 at 6. Leal contends he only admitted that he possessed 1140.9 grams of methamphetamine in the factual basis of the plea agreement, and this amount should have been the amount used in calculating his sentence under the Sentencing Guidelines.  Leal argues that a jury did not find beyond a reasonable doubt nor did he admit to possession of the twenty pounds of methamphetamine used by this Court to calculate his sentence.  *Id.* at 6-11. This claim is procedurally defaulted because Leal previously raised this claim on direct appeal and the claim was resolved against him. Generally, claims raised and disposed of in a previous appeal are precluded from reconsideration in a Section 2255 proceeding. *Davis v. United States*, 417 U.S. 333 (1974); *Richards v. United States*, 837 F.2d 965, 966 (11th Cir. 1988); *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981). Leal has not established any extraordinary circumstance that would justify reconsideration of these claims. See Schlup v. Delo, 513 U.S. 298 (1995); *Davis v. United States*, 417 U.S. 333.

Furthermore, Leal waived the right to collaterally attack his sentence in the plea agreement.  The right to appeal is statutory and can be knowingly and voluntarily waived. *See Williams v. United States*, 396 F.3d 1340, 1342 (11th Cir. 2005).  For this court to enforce an appeal waiver in a plea agreement, the United States must demonstrate either that the Magistrate Judge specifically questioned Leal concerning his understanding of the sentence appeal waiver during the Fed R. Crim. P. 11 colloquy or that it is manifestly clear

from the record that Leal understood the full significance of the waiver. *Williams*, 396 F.3d at 1342. A defendant's waiver of appeal "directly or collaterally" encompasses his right to challenge his sentence in a section 2255 proceeding. *See Williams*, 396 F.3d at 1342.

At the rearraignment, the Magistrate Judge discussed the appeal waiver with Leal:

**THE COURT**: You can only appeal now if the Government appeals first or if the Judge gives you something more than what the charging statute permits, which as I explained to you is a ten to life provision . . . [s]o something more than that. Or if the Judge departs upward from the guideline range the Judge finds to apply in the case or there is some other violation of the law separate and apart from the guidelines.

CR-40 at 11-12.

Leal acknowledged that he understood the appeal waiver. CR-40 at 12. Because the Magistrate Judge specifically questioned Leal about his understanding of the appeal waiver, and found that the appeal waiver was knowing and voluntarily made, Leal waived his right to raise this claim in a section 2255 motion to vacate.

Even if Leal had not waived the right to collaterally attack his sentence, this claim should be denied on the merits. Leal argues that *Apprendi/Blakely/Booker*[4] are applicable to the instant case because the determination of his sentence utilized facts not charged in the indictment, nor admitted in the plea agreement, nor found beyond a reasonable doubt

---

[4]*Booker* is part of a progeny of cases that started with *Apprendi v. New Jersey*, 530 U.S. 466 (2000). In *Apprendi*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 490. The next line in the progeny was *Blakely v. Washington*, 542 U.S. 296 (2004). In *Blakely*, the Supreme Court applied *Apprendi* to a state-sentencing-guideline sentence and held "that the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the Petitioner." *Id.* at 303. In *Booker*, the Supreme Court extended the rule of *Blakely* and held that the mandatory application of the federal sentencing guidelines was incompatible with the Sixth Amendment's guarantee of a right to a jury trial. *Id.* at 245-246. *Booker* required that the provisions of the Federal Sentencing Act that made the guidelines mandatory be severed and excised, thereby rendering the guidelines "effectively advisory." *Id.* Notwithstanding, the Supreme Court held that a district court is required to consider the guidelines when sentencing a Petitioner within the statutory ranges set by Congress. *Id.*

by a jury.  As a result, Leal argues that he should have been held accountable for a lesser amount of methamphetamine and sentenced based on a guideline offense level 32 or 34, instead of level 36.

In the instant case, the district court judge did find a drug amount at sentencing beyond that contained in the factual basis of the plea agreement, but that drug amount did not result in a sentence that exceeded the maximum penalty authorized by statute.  There is no question that a life sentence is the maximum penalty for the offense of possession with the intent to distribute 500 grams or more of methamphetamine the crime to which Leal pled.  Since a ten-year to life sentence was the range authorized by the facts admitted by Leal when he was adjudicated guilty, it was then up to the district court to determine where in that spectrum Leal's punishment should fall.  Thus, the Court did not exceed the maximum penalty authorized by statute when the facts authorized a life sentence, and Leal received a sentence of 24 years and 4 months imprisonment.

Ground Two does not warrant relief.


### Ground Three

Leal alleges that he was incorrectly sentenced for possessing a Schedule II drug, because he only possessed and admitted to possessing methamphetamine in the rock form which Leal contends is a Schedule III drug. This claim, although available, was never raised on direct appeal. Claims that previously were available and were not raised in a prior proceeding are procedurally defaulted and barred from consideration on collateral review except in special circumstances. *See Bousley v. United States*, 523 U.S. 614, 622-24 (1998); *United States v. Frady*, 456 U.S. 152, 166 (1982); *McCoy v. United States*, 266

13

F.3d 1245, 1258 (11th Cir. 2001).

When a petitioner raises a constitutional claim on collateral review that he failed to raise in the trial proceedings or on direct appeal, he bears the burden of establishing cause for failure to raise the claim and actual prejudice resulting from the error, or actual innocence to excuse the default. *McCoy*, 266 F.3d at 1258-59. To show cause for not raising a claim in an earlier proceeding, a petitioner must show "some external impediment preventing counsel from constructing or raising the claim." *See High v. Head*, 209 F.3d 1257, 1262-63 (11th Cir. 2000) (*quoting McCleskey v. Zant*, 499 U.S. 467, 497 (1991)).

A petitioner can establish cause in some circumstances by showing that a procedural default was caused by constitutionally ineffective assistance of counsel under *Strickland*, 466 U.S. at 690; *see Fortenberry v. Haley*, 297 F.3d 1213, 1222 (11th Cir. 2002), as Leal attempts to do in the present case. Leal alleges that his counsel was ineffective for failing to raise the claim in Ground Three on direct appeal.

However, because the claim has no merit, Leal cannot show cause to overcome the procedural default by alleging ineffective assistance of counsel. Counsel is not ineffective when he does not raise meritless arguments on appeal. See *Chandler v. Moore*, 240 F.3d 907, 917-18 (11th Cir. 2001) (counsel not ineffective for failing to raise a nonmeritorious issue)(citing *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)); *Card v. Dugger*, 911 F.2d 1494, 1520 (11th Cir. 1990).

Claim Has No merit

The Comprehensive Drug Abuse Prevention and Control Act gave the Attorney General authority to reclassify drugs into different schedules. 21 U.S.C. § 811(a)-(c). The Attorney General delegated this authority to the Director of the Bureau of Narcotics and

Dangerous Drugs (under the Department of Justice), 28 C.F.R. § 0.100, who reclassified methamphetamine in the "rock" form as a Schedule II substance. 36 Fed. Reg. 12734, 12734 (July 7, 1971).

Leal argues that Congress "never legislated a change" to 21 U.S.C. § 812 "to reflect the acceptance of the reclassification of methamphetamine as Schedule II substance only." CV-2 at 12.  Leal further alleges that because a jury did not determine the factual element of whether the controlled substance he had in his possession was a Schedule III . . . or Schedule II drug, " beyond a reasonable doubt," he is actually innocent of the possession of a Schedule II drug.

Leal's claim has no merit because all forms of methamphetamine were properly classified as Schedule II drugs. See *United States v. Lane*, 931 F. 2d 40 (11th Cir. 1991)(The Attorney General and the Bureau of Narcotics and Dangerous Drugs followed the proper procedures in reclassifying methamphetamine, in all forms, as a Schedule II controlled substance.) ; *see also Vega v. United States*, 2006 WL 1805885 at *1 (M.D. Fla. June 29, 2006)(statute makes no distinction between liquid and powder methamphetamine).  Analogously, the statute makes no distinction between rock and liquid methamphetamine.

Because the claim lacks merit, Leal also cannot show his counsel was ineffective for failing to raise the claim on direct appeal, *Chandler v. Moore*, 907, 917-918 (11th Cir. 2001), and Leal cannot overcome his procedural default.

Ground three does not warrant relief.

Accordingly, the Court orders:

That Leal's motion to vacate (Doc. CV-5; CR-45)  is DENIED.  The Clerk is directed

to enter judgment against Leal in the civil case and to close that case.

## CERTIFICATE OF APPEALABILITY AND
## LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Defendant is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, Defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Defendant has not made the requisite showing in these circumstances.

Finally, because Defendant is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on April 19, 2007.

SUSAN C. BUCKLEW
United States District Judge

AUSA: Kelley Clement Howard-Allen
Robin Leal, pro se

16